CARLSON *et al. v.* FOX *et al.*

JENKINS, Presiding Justice. The petition as brought shows in effect that the supreme authority of the church rested in the congregation, and that the congregation had provided by its constitution that a board of deacons elected by the congregation, who together with the pastor constituted an executive committee, should hold and disburse the funds belonging to the church, and that the petitioners had been duly elected by the congregation as deacons; but that a board of elders appointed by the pastor had usurped the function of the duly elected deacons, by taking charge of the funds belonging to the church and refusing to permit the board of deacons to exercise its functions. We think that the rights of property are thus shown to be involved by the allegations of the petition; that the church is entitled to hold and expend its funds according to the methods and through the instrumentality constituted by it; and that the seizure of the church funds by unauthorized parties constitutes a conversion, irrespective of the manner of its expenditure. While it is not alleged that the funds were being dissipated or perverted for improper uses and purposes, such an allegation is unnecessary as against an alleged usurper of authority. Were the petition against persons duly constituted to hold and expend the funds, the rule would be different, and in such an event it would be necessary to show that the proper custodian was expending the funds for purposes "utterly variant from that to which it was originally devoted." *Mack* v. *Kime*, 129 *Ga.* 1, 21 (58 S. E. 193, 24 L. R. A. (N. S.) 675). Courts being extremely reluctant to interfere in the conduct of religious institutions, if the petition had shown that this case involved a controversy between factions of the church as to who represented the consensus of its supreme governing authority, we would be quick to hold that the controversy should be submitted to its own supreme authority for determination. So far as the petition shows, such is not the case, but according to the allegations the alleged usurpers do not pretend to be acting under any power conferred by the supreme authority of the church.

As to the right and duty of deacons to protect the trust conferred upon them and assumed by them, see *Bates* v. *Houston,* 66 *Ga.* 198 and *Mc-Cluskey* v. *Rakestraw,* 167 *Ga.* 199 (144 S. E. 761).

For the reasons above stated, and since the other grounds of the demurrer appear to be without merit, we are of the opinion that the court did not err in overruling the demurrer, and that its judgment should be

*Affirmed. All the Justices concur, except Grice and Wyatt, JJ., who dissent.*

No. 14946.   September 13, 1944.   Rehearing denied October 7, 1944.

*Wright, Willingham & Fullbright,* for plaintiffs in error.

*Mrs. Charles Camp* and *James Maddox,* contra. ·

GRICE, Justice, dissenting. It has been repeatedly ruled that a court of equity will not interfere with the internal affairs of a religious organization, when no property rights are involved, for the reason that civil courts have no jurisdiction of such matters and can not take jurisdiction of them, whether they have been adjudicated by the ecclesiastical courts, i. e., church tribunals, or not. *Gibson* v. *Singleton,* 149 *Ga.* 502 (101 S. E. 178) ; *Hall* v. *Henry,* 159 *Ga.* 80 (124 S. E. 883) ; *McCluskey* v. *Rakestraw,* 164 *Ga.* 30 (137 S. E. 394).

It is insisted that property rights are here involved, and therefore that the civil courts have jurisdiction, under the principle recognized by the foregoing decisions and the authorities on which they are founded. The basis for the rule that the civil courts possess jurisdiction when property rights are involved is that a court of equity will in a proper case interfere to prevent the diversion of the church property to purposes utterly variant from those for which the organization was formed. *Mack* v. *Kime,* 129 *Ga.* 1 (supra). Equity's aid is thus extended for the protection of a trust. *Tucker* v. *Paulk,* 148 *Ga.* 228 (96 S. E. 339). "Courts are reluctant to interfere in questions affecting the management of the temporalities of a church; but when property is devoted to a specific doctrine or purpose, the courts will prevent it from being diverted from the trust." Code, § 22-408. The Code section just quoted is not authority for the proposition that the civil courts will assume jurisdiction to determine the internal dissensions of a religious group merely because property rights may be involved. It does not so declare. The courts will in a proper case interfere to protect property rights, even though, in doing so, it may be necessary as an incident of such protection to stay the hand of those who claim to be acting under church authority. But unless the case be one where a court would interfere to protect a property right, without regard to its being involved in a church dissension,

the court will not assume jurisdiction of the controversy as to the internal affairs of the organization, even though some property be involved.

The reluctance mentioned in the Code section above referred to causes us to pause and to examine the petition in order to ascertain whether or not any facts are alleged to show that any property devoted to a specific doctrine or purpose is being diverted.

The petition asserts that, under the constitution and rules governing this particular church, the pastor and deacons form an executive committee in whom is vested among other things the power to appropriate money; that all officers of the church are elected at congregational meetings, and in no other manner; that there is in said church no such office as "elder;" that nevertheless the three defendants claim to have been appointed by the pastor as elders for life. In one paragraph, it is alleged that such defendants took charge of all money of said church and other property except the real estate, title to which vests in trustees, and the same has been disbursed under their direction and appropriation. In another, it is stated that the defendant A. S. Hufstetler takes charge of all money contributed to the support of the church, and refuses to permit them, as an executive committee, to appropriate such money for the uses of the church in accordance with the constitution and rules of said church. In still another paragraph, it is averred that the defendants are illegally disbursing the money of said church, and that the defendant Hufstetler is paying the same out without any appropriation of the executive committee, and will continue so to do if not restrained and enjoined from so doing. There is nothing here to show that the defendants are spending the money of the church for any illegal purpose, or for objects foreign to its purposes. Hence the averments do not support the theory of any diversion of trust funds. The only other allegation that hints at diversion is in the latter part of the 17th paragraph of the petition, which is in these words: "In this connection, they further show that, by claiming to be elders in said church, they have entirely changed the discipline and church government, . . thereby diverting the church property from the trust to which it has been devoted and the purpose for which said funds were contributed to its building." The fact therein alleged does not support the conclusion stated, to wit, that, by claiming to

be elders in said church, etc., they are thereby diverting church property from the trust to which it had been devoted.

The petition does not involve any such property right as takes the case without the general rule that a court of equity will not interfere with the internal affairs of a religious organization.

I am authorized to say that Mr. Justice Wyatt concurs in this dissent.