THE WESTERN CONFERENCE OF ORIGINAL FREE WILL BAPTISTS OF NORTH CAROLINA, AN UNINCORPORATED RELIGIOUS ASSOCIATION; AND M. L. JOHNSON, MODERATOR; DEWEY BOLING, ASSISTANT MODERATOR; R. N. HINNANT, CLERK; RALPH BARNES, TREASURER; OFFICERS OF SAID CONFERENCE, M. L. JOHNSON, R. N. HINNANT, EARL GLENN, R. H. JACKSON AND RALPH BARNES, EXECUTIVE COMMITTEE OF SAID CONFERENCE, AND J. G. TEASLEY, OLIF PASCHALL, CALVIN GRIFFIN, JOE PEELE, THE BOARD OF DEACONS OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH; AND H. M. ALFORD, LEONARD GIBBS, BOYCE MOIZE, INDIVIDUALLY AND AS TRUSTEES; AND LEO PASCHALL, CHURCH CLERK; AND H. A. STEWART, CHURCH TREASURER, ALL OFFICERS OF THE OFFICIAL BOARDS OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH AND OTHERS OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH UNITED IN INTEREST AS RECOGNIZED BY THE WESTERN CONFERENCE OF ORIGINAL FREE WILL BAPTISTS OF NORTH CAROLINA, KNOWN AS THE J. G. TEASLEY FACTION, v. JAMES A. MILES, LLOYD WILLIFORD, RICHARD BLAKE, SAM WELLS, MACON PERRY, BOBBY McCORKLE, TOM LEE, ARNOLD GOODMAN, CLYDE POWELL, ALL DEFENDANTS PURPORTING TO BE MEMBERS OF THE BOARDS OF DEACONS OF THE EDGEMONT FREE WILL BAPTIST CHURCH; AND, GROVER C. MYERS; AND J. E. CHAPPELL, INDIVIDUALLY AND AS THE PURPORTED BOARD OF TRUSTEES OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH, AND OTHERS UNITED IN INTEREST WITH THE ABOVE NAMED, KNOWN AS THE JAMES A. MILES FACTION.

AND

THE WESTERN CONFERENCE OF ORIGINAL FREE WILL BAPTISTS OF NORTH CAROLINA, AN UNINCORPORATED RELIGIOUS ASSOCIATION, M.

L. JOHNSON, MODERATOR, DEWEY C. BOLING, ASSISTANT MODERATOR; R. N. HINNANT, CLERK, RALPH BARNES, TREASURER, CONSTITUTING THE OFFICERS OF SAID CONFERENCE; M. L. JOHNSON, R. N. HINNANT, EARL GLENN, R. H. JACKSON, AND RALPH BARNES, CONSTITUTING THE EXECUTIVE COMMITTEE OF SAID CONFERENCE, v. RONALD CREECH.

AND

J. G. TEASLEY, OLIF PASCHALL, CALVIN GRIFFIN, JOE PEELE, THE BOARD OF DEACONS OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH; AND H. M. ALFORD, LEONARD GIBBS, BOYCE MOIZE, TRUSTEES; AND LEO PASCHALL, CHURCH CLERK; AND H. A. STEWART, CHURCH TREASURER, ALL OFFICERS OF THE OFFICIAL BOARD OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH, AND OTHERS OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH, UNITED IN INTEREST AS RECOGNIZED BY THE WESTERN CONFERENCE OF ORIGINAL FREE WILL BAPTISTS OF NORTH CAROLINA, KNOWN AS THE J. G. TEASLEY FACTION v. RONALD CREECH.

(Filed 6 March 1963.)

**1. Trial § 33—**

The court is required to apply the law to the conflicting factual situations presented by the evidence upon an issue and to bring into focus the controlling elements of controversy thereon. G.S. 1-180.

**2. Appeal and Error § 45—**

Error in the instructions in placing an excessive burden upon one of the parties in respect to an issue is cured by a verdict on the issue in favor of such party.

**3. Religious Societies § 3—**

Civil courts will not adjudicate ecclesiastical matters except when and to the extent necessary to determine civil and property rights.

**4. Same—**

When civil courts are required to determine ecclesiastical questions they will do so in accordance with the laws, customs, and usages of the church involved, and the decisions of an authorized church tribunal will be accepted by the courts as conclusive when the church tribunal has acted within the scope of its authority and has observed its own organic forms and rules unless its procedure is arbitrary or manifestly unfair.

**5. Same—**

Subject to the limitation that an ecclesiastical tribunal may not follow procedure which is patently arbitrary or unfair, its procedure in matters properly within its jurisdiction is to be determined by such tribunal, and a civil court may not require it to observe the usual incidents of trial.

**6. Same—**

Where it is established by the answer to the first issue that an ecclesiastical tribunal has final ecclesiastical authority and jurisdiction to decide between factions of a church congregation in the event of a division within the congregation, it is error for the court in charging the

CONFERENCE *v.* MILES AND CONFERENCE *v.* CREECH AND TEASLEY *v.* CREECH.

jury on succeeding issues to fail to explain the law arising on the conflicting evidence as to whether the circumstances and activities within the congregation were such as to invoke the jurisdiction of the tribunal and whether the procedure of the tribunal was arbitrary and unfair. Further, it is error for the court to charge that the procedure of an ecclesiastical tribunal must follow the only procedure known to it in determining such dispute.

**7. Pleadings § 28—**

Plaintiffs must prevail, if at all, upon the theory of the complaint.

**8. Religious Societies § 2—**

The right to possession and use of church property belongs to those of the congregation who have remained faithful to the doctrines, polity, and fundamental customs and rules of the denomination as accepted by the congregation prior to dissension.

**9. Pleadings § 29—**

The issues arise upon the pleadings.

**10. Trial § 40—**

The number, form, and phraseology of the issues lie within the sound discretion of the trial court, and the issues will not be held for error if they are sufficiently comprehensive to resolve all factual controversies and to enable the court to enter judgment fully determining the cause.

**11. Religious Societies § 3— Rules for determining conclusiveness of decision of ecclesiastical tribunal.**

When it is established that an ecclesiastical tribunal has jurisdiction to determine as between factions of the congregation which is the true congregation of a particular church, the determinative question in an action involving civil and property rights of members of the church, dependent upon the decision of the church tribunal, is whether a schism or division exists within the congregation so as to invoke the jurisdiction of the ecclesiastical tribunal and whether it had substantial factual ground upon which to base its decision in favor of one of the factions, and, if both questions are determined affirmatively by the jury, whether the tribunal, or the committee acting for it, gave the other faction reasonable notice of the nature of the charges against it, the general identity of its accusers, and reasonable opportunity to be heard, and thus establish that the ecclesiastical tribunal did not act arbitrarily or with manifest unfairness.

APPEAL by plaintiffs from *Hobgood, J.,* March 1962 Civil Term of DURHAM.

These cases were docketed and argued as cases 672, 673 and 674, respectively, at the Fall Term 1962. They involve the right to possession, use and control of the properties and records of the Edgemont Original Free Will Baptist Church of Durham (Edgemont), certain jurisdictional rights of the Western Conference of Original Free Will

Baptists of North Carolina (Western Conference), and the right of Ronald Creech to serve as pastor of Edgemont.

The parties to the actions are: (1) Plaintiff Western Conference, an unincorporated regligious association; (2) plaintiffs J. G. Teasley and others (Teasley faction), who are allegedly the true congregation, some of them officials, of Edgemont; (3) defendants James A. Miles and others (Miles faction), who are allegedly the true congregation, some of them officials, of Edgemont; and (4) defendant Ronald Creech, allegedly pastor of Edgemont.

In each of the cases the court entered judgment adverse to plaintiffs. Plaintiffs appeal.

*Arthur Vann and Clarence M. Kirk for plaintiffs, appellants.*

*Lake, Boyce & Lake for defendants, appellees.*

*I. Joseph Horton for Central Conference of Original Free Will Baptist of North Carolina, Amicus Curiae.*

*Hubert Phillips for North Carolina State Convention of Original Free Will Baptists, Amicus Curiae.*

*Johnson, Gamble & Hollowell for Cape Fear Conference of Original Free Will Baptists of North Carolina, Amicus Curiae.*

*R. S. Langley and Robert D. Wheeler for Eastern Conference of Original Free Will Baptists of North Carolina, Amicus Curiae.*

*Maupin, Broughton, Taylor & Ellis for National Association of Original Free Will Baptists of the United States, Amicus Curiae.*

*William A. Mahler, Jr., for State Association of Original Free Will Baptists of N. C., Blue Ridge Association of Original Free Will Baptists of N. C., Coastal Association of Original Free Will Baptists of N. C., General Conference of Original Free Will Baptists of N. C., Jack's Creek Association of Original Free Will Baptists of N. C., and Piedmont Association of Original Free Will Baptist of N. C. Amicus Curiae.*

MOORE, J. This is the second time we have heard appeals in these cases. At the Fall Term 1961 defendants appealed from orders continuing temporary injunctions to the final hearings. We modified and affirmed the temporary restraining orders, and as a result defendants were enjoined, pending final determination of the actions, in general as follows: (1) The Miles faction was restrained from excluding the Teasley faction from the use and possession of the church property; (2) defendant Creech was restrained from holding himself out as an Original Free Will Baptist minister by reason of ordination by or membership in the Western Conference; and (3) defendant Creech was

restrained from serving as pastor of Edgemont. *Conference v. Creech*, 256 N.C. 128, 123 S.E. 2d 619. The opinion summarizes proceedings had prior to and in the course of that appeal, and sets out the injunctive orders in detail.

At the March 1962 Term of Superior Court the case first listed in the caption, *Western Conference and Teasley faction v. Miles faction* (our Docket No. 666), came on for trial before Judge Hobgood and a jury. The other two cases were not tried on the merits.

Plaintiffs' evidence (in case 666), offered in support of the allegations of the complaint, tends to show in substance the following facts (paragraphed and numbered by us):

(1). The Original Free Will Baptist denomination of North Carolina originated in 1727. There are presently 50,000 members in the State. The local churches send delegates to an annual State Convention. The local churches have membership in geographically convenient Conferences within the State. There are nine Conferences. The Western Conference was formed in 1886. Presently about fifty churches, having a total of about 10,000 members, are associated in the Western Conference.

(2). Many years ago the State Convention adopted and promulgated a treatise of faith and government (Discipline) for the Original Free Will Baptists of North Carolina. It has been revised from time to time, and was last revised in 1955. It has been recognized, observed and adopted as the ecclesiastical law of the denomination by the Conferences and local churches. The Western Conference has been governed by it. The Western Conference adopted the 1955 revision in an annual session held at Edgemont. The Western Conference has a constitution and by-laws of its own, not inconsistent with the Discipline. Certain customs, practices and usages, as disclosed by the official minutes of the Conference sessions, have become recognized and accepted by the Original Free Will Baptists of North Carolina as a part of their church polity. According to the Discipline "The Annual Conference, the highest tribunal, shall have final disciplinary authority over the local church." As between the Conference and the local church there is a connectional form of government. Local churches are organized by the Conferences, and the Conferences have exclusive authority to ordain and discipline pastors. By custom and usage the Conference may discipline local churches and decide between factions within the local church.

(3). Edgemont was formed in accordance with the Discipline in 1922, was received into the membership of the Western Conference in

1923, has at all times since had continuous membership therein, has adhered to the customs, practices and usages of the Original Free Will Baptists of North Carolina, and has participated in the programs and policies of the Western Conference and the denomination. Title to the property of Edgemont is in "Trustees of Edgemont Free Will Baptist Church."

(4). In August 1960 unrest, strife and dissension arose in Edgemont Church. The Miles faction and Creech, then pastor, had set out upon a course of departure from the fundamental tenets, faith, polity and customs of the Original Free Will Baptists of North Carolina. The Teasley faction remained true to the faith and reported the offenses and derelictions of the Miles group to the officials of the Western Conference. The Executive Committee and the Board of Ordination, which function for the Western Conference when not in session, attempted during the latter part of 1960 and the early part of 1961 to have the Miles faction and Creech attend meetings called by the Committee and Board that the charges might be heard and discussed and that recommendations might be made. Though notice of the charges and the time and place of meetings was given, the Miles faction refused to be present and participate in any of the meetings, but undertook to expel the Teasley faction from offices and membership in the church, to withdraw the church from the Western Conference, to petition for membership in another Conference, to confer authority upon Creech to perform marriage ceremonies, and to otherwise defy the jurisdiction and authority of the Western Conference. They seized the church property and by threats barred the Teasley faction therefrom. The Executive Committee and the Board of Ordination finally heard the charges in the absence of the Miles faction, though the latter had been given notice of the meeting and had been directed to attend. The Committee and Board made a written report to the Conference.

(5). At a session of the Western Conference the report was heard and considered. By a vote of 88 to 10 the Conference recognized the Teasley faction as the true congregation of Edgemont. Thereafter, the Teasley faction demanded possession of the church property. Defendants refused. The Teasley faction, as the true congregation, elected trustees and other officers for Edgemont.

(6). The Miles faction has departed from the tenets, faith, polity and customs of the Original Free Will Baptists of North Carolina, as they were recognized and observed prior to August 1960, in that it failed and refused to cooperate with the Western Conference, State

Convention and other churches in support of denominational institutions, programs and enterprises; advocated and tolerated the doctrine of "eternal security" which is contrary to the declaration of faith entitled "Perseverance of the Saints," as set out in the Discipline; refused to use the Sunday School literature printed and distributed for and on behalf of the denomination; refused to avow and re-affirm adherence to the Discipline and the customs and usages of the denomination when requested to do so by the Conference; defied the orders and requests of the Western Conference and undertook to appeal therefrom to the National Association when no such appeal is authorized by the Discipline; seized the property and records of the church and retained them in defiance of the orders of the Western Conference; expelled members maliciously and without a hearing; arbitrarily removed from office duly elected officials; recognized Creech as pastor after the Conference had withdrawn his credentials, and undertook to confer on him the authority to perform marriage ceremonies; refused to support the Mount Olive Junior College and openly criticized it; ceased making gifts to the Board of Superannuation of Original Free Will Baptist Churches of North Carolina; discontinued support of the Mission Boards and the Free Will Baptist Children's Home; permitted the Western Conference officials and member ministers to be openly criticized in the church bulletin; and permitted independent ministers to fill its pulpit in preference to ministers duly ordained by the Conferences.

In summary, defendants' evidence tends to show:

(1). Edgemont is an independent, autonomous, congregational type church of the Original Free Will Baptist faith. Its government is by majority rule. The Western Conference is a voluntary association of churches organized to promote activities and enterprises in which the member churches are interested. It does not represent individual churches. The Discipline is not an official document of the Western Conference, but it provides that "Each local church is a distinct and independent organization, with full authority to manage its own internal affairs, elect its officers, receive, dismiss, discipline and exclude members." No Conference has ever interfered with local church affairs. The Conference may act only if called upon by the entire congregation of a local church to mediate and arbitrate local church matters. It cannot force a congregation into trial; it can only make recommendations. Its only disciplinary authority is the right to withdraw the hand of fellowship from the local church.

(2). Edgemont is the largest Free Will Baptist Church in the State, having 850 members. For a long time it had no conference connection. It voluntarily associated with the Western Conference, but in doing so it did not surrender any property rights, or any right to manage its internal affairs and govern itself.

(3). For several years Edgemont. gave some financial support to Mount Olive Junior College which was founded by a group of Free Will Baptists of eastern North Carolina. About 1956 the College began to pursue liberalistic policies not in conformity with the tenets of the denomination or the teachings of the Holy Bible. Edgemont ceased supporting the College and thereafter steadfastly refused to give it further support. The Treasurer and Business Manager of the College is an official of the Western Conference. He entered into a conspiracy with J. G. Teasley and a few others to remove Creech as pastor of Edgemont and procure a minister in sympathy with the College. A vote was taken by the Official Board of Edgemont on the question of the retention of Creech — the vote was 7 to 2 for retention. In June 1960 the congregation voted 310 to 16 to retain Creech. Teasley and others were told to cease promoting strife, but they continued to cause unrest and held secret meetings with the College Treasurer. By a majority vote of the congregation Teasley and four others were removed from church offices and expelled from membership.

(4). The so-called Teasley faction consists only of five families out of a membership of 850 and at no time after June 1960 were members of the church or a faction within the Church.

(5). The College Treasurer, as an official of the Western Conference, notified Edgemont that charges had been filed with the Conference against it. The specific charges and the names of the accusers were not disclosed, though defendants made every effort to obtain this information. Under these circumstances defendants refused to attend meetings called by Conference officials, and refused to submit to trial by them. Orders were made against the church by the Conference without a hearing.

(6). By majority vote of the congregation Edgemont withdrew from the Western Conference and applied for membership in another Conference. Defendants are the true congregation of the church, have always adhered to the tenets and doctrine of the Free Will Baptist faith and have never departed therefrom. The local church holds title to the church property. Edgemont has been a member of the National Association of Free Will Baptists for many years, has appealed from the orders of the Western Conference to the National Association, and

is abiding by the decision of the National Association. The National Association has affirmed Edgemont's right to appeal.

The foregoing review of plaintiffs' and defendants' evidence is a bare summary of 489 pages of the record and many letters and documents presented to this Court in original form. The evidence tends to support the pleadings.

Three issues were submitted to and answered by the jury as follows:

"1. Did the Western Conference of the Original Free Will Baptists of North Carolina have authority and jurisdiction at the time of its reconvened session on January 18, 1961 to decide between the Teasley and Miles factions of the Edgemont Original Free Will Baptist Church and determine which faction should be recognized as the true congregation of said church?

"ANSWER: Yes.

"2. If so, was the action of the Western Conference in deciding and recognizing that the Teasley faction is the true congregation of the Edgemont Original Free Will Baptist Church within its authority, jurisdiction, forms and rules?

"ANSWER: No.

"3. Is the Teasley faction of Edgemont Original Free Will Baptist Church entitled to the use and control of the real and personal property of Edgemont Original Free Will Baptist Church?

"ANSWER: No."

The court entered judgment dismissing the action, vacating all temporary injunctions theretofore entered in the cause, ordering all real and personal property of Edgemont delivered to defendants and the trustees named by them, and restraining plaintiffs from asserting any claim to such property.

The issues, considered in the light of the court's instructions with respect thereto, do not support the judgment. The court erred in failing to apply the law to the facts on the second issue and to bring into focus the controlling elements of controversy on that issue. ". . . (T)he statute (G.S. 1-180) requires the judge 'to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relations of the particular evidence adduced to the particular issues involved.' 53 Am. Jur., Trial, section 509." *Lewis v. Watson*, 229 N.C. 20, 23, 47 S.E. 2d 484.

The jury answered the first issue "Yes." Therefore plaintiffs will not be heard to complain as to matters relating to that issue, though the court placed a somewhat excessive burden upon plaintiffs with respect thereto and required plaintiffs to prove facts beyond the pur-

view of the issue as framed. The errors, if any, relating to the matters involved on the first issue were cured by the verdict. *Randle v. Grady,* 228 N.C. 159, 165, 45 S.E. 2d 35. For the purposes of the trial, the jury's answer to the first issue, considered in the light of the court's instructions, established the proposition that the Western Conference, at the time of its reconvened session on 18 January 1961, when decision was made, had final ecclesiastical authority and jurisdiction to decide between the Teasley and Miles factions of Edgemont and to determine which faction is the true congregation of Edgemont. In other words, the jury found that there is a connectional relationship between the local church and the Western Conference and that the Conference is the "highest tribunal" and has authority and jurisdiction to decide between factions in the local church.

The ultimate question for determination in this lawsuit is whether the Teasley faction is the true congregation of Edgemont to the exclusion of the Miles faction. ". . . (W)here factional differences occur in an ecclesiastical body, the rule of the civil courts in dealing with the property rights disputed between the factions is to give effect to the will of that part of the organization acting in harmony with the ecclesiastical laws, usages, customs and principles which were accepted among them before the dispute arose." *Skyline Missionary Baptist Church v. Davis,* 17 S. 2d 533 (Ala. 1944) ; *Reid v. Johnston,* 241 N.C. 201, 206, 85 S.E. 2d 114.

The Western Conference decided in effect that the Teasley faction adhered and remained true to the ecclesiastical laws, usages, customs, faith and doctrines accepted by Edgemont before the dissension arose; and that the Miles faction had departed therefrom. "Ordinarily it is for the superior organization or judicatory with which a congregation is associated to determine which of two contending groups represent the true faith." 76 C.J.S., Religious Societies, s. 85, p. 873; *First English Evangelical, Etc., Church v. Dysinger,* 6 P. 2d 522 (Cal. 1931) ; *Gibson v. Trustees of Pencader Presbyterian Church,* 20 A. 2d 134 (Del. 1941) ; *Trustees of Pencader Presbyterian Church v. Gibson,* 22 A. 2d 782 (Del. 1941) ; *Carlson v. Fox,* 31 S.E. 2d 597 (Ga. 1944). It is an ecclesiastical matter.

"The legal or temporal tribunals of the State have no jurisdiction over, and no concern with, purely ecclesiastical questions and controversies. . . ." *Reid v. Johnston, supra.* "An ecclesiastical matter is one which concerns doctrine, creed, or form of worship of the church, or the adoption and enforcement within a religious association of needful laws and regulations for the government of membership, and the power of excluding from such associations those deemed unworthy of

membership by the legally constituted authorities of the church; and all such matters are within the province of church courts and their decisions will be respected by civil tribunals." 76 C.J.S., Religious Societies, s. 85, p. 872; 24 L.R.A. (N.S.) 703; *Watson v. Jones,* 13 Wall. 679; *Puckett v. Jessee,* 81 S.E. 2d 425 (Va. 1954); *Stone v. Bogue,* 181 S.W. 2d 187 (Mo. 1944); *Krecker v. Shirey,* 30 A. 440 (Pa. 1894). "Civil courts adjudicate ecclesiastical matters only when civil or property rights are involved, and then only when their determination is necessary and incident to the adjudication of civil or property rights, and will go no further in considering ecclesiastical matters than is necessary for a determination of the case before it. When property rights are involved, ecclesiastical questions are to be determined in accordance with the laws, customs, and usages of the church involved and the decisions by authorized church tribunals will be accepted by the courts as conclusive on such questions, it has been held, unless they clearly violate the church law or are in conflict with the law of the State." 76 C.J.S., Religious Societies, s. 86, pp. 876-7; 45 Am. Jur., Religious Societies, s. 60, p. 770; 24 L.R.A. (N.S.) 702; 32 L.R.A. 98; *Presbytery of Bismark v. Allen,* 22 N.W. 2d 625 (N.D. 1946); *Krecker v. Shirey, supra.*

But it has been held that the decree of a church tribunal, affecting civil and property rights, is binding only when it is affirmatively shown that the tribunal acted within the scope of its authority and has observed its own *organic* forms and rules. 45 Am. Jur., Religious Societies, s. 41, p. 751. If a judgment of an ecclesiastical judicatory is not recognized and followed by the civil courts it is because it clearly involves an infraction of the fundamental laws of the church, the church court exceeded its jurisdiction, or the ecclesiastical tribunal proceeded arbitrarily, was clearly wrong and manifestly unfair. The civil court examines the judgment on its merits. 24 L.R.A. (N.S.) 701; 49 L.R.A. 395-399; *Olear v. Haniak,* 131 S.W. 2d 375 (Mo. 1939); *Mack v. Kime,* 58 S.E. 184, 24 L.R.A. (N.S.) 675 (Ga.); *West Kosh-Konong Cong v. Ottesen,* 49 N.W. 24 (Wis.); *Schweiker v. Husser,* 34 N.E. 1022 (Ill.); *O'Hara v. Stack,* 90 Pa. 477.

The validity of a decree of a church tribunal does not depend on technical procedural regularity. "It is generally held that the mode of procedure to be adopted by an ecclesiastical tribunal in the trial of a matter properly within its jurisdiction must be left to the determination of such tribunal, and a civil court has no power to require a church court to observe the usual incidents of trial, such as *formulation* of charges and notice." 45 Am. Jur., Religious Societies, s. 46, p. 756. Every competent tribunal must of necessity regulate its own formulas.

49 L.R.A. 397. A decree of an ecclesiastical judicatory will be held invalid on procedural grounds only if there was an infraction of a fundamental organic form or rule of the church or the procedure followed was such as to show an arbitrary unfairness.

The trial court's summary and final instruction on the second issue was as follows: ". . . if you find from the evidence and by its greater weight that the Western Conference had under its customs and practices and under the Statement of Faith and Discipline and Constitution and By-Laws authorized the Executive Committee to hear grievances from members and churches within the Conference and that the Executive Committee and Board of Ordination of the Western Conference did attempt to mediate the dispute in Edgemont Church between the Miles faction and the Teasley faction, and that the Executive Committee and Board of Ordination prepared and presented a report entitled "Edgemont Church" to the Western Conference at its reconvened session on January 18, 1961 in keeping with the authority and jurisdiction of the Conference, and that this was the only procedure known to this Conference in determining disputes of this nature, and if you should further find that this Conference did act on January 18, 1961 in keeping with their custom and practice and authority, forms and rules, and you find all of these facts from the evidence and by its greater weight, the Court instructs you that you will answer the second issue 'yes'. . . . Now, if you fail to so find from the evidence and by its greater weight, then you will answer issue No. 2 'no'."

The vice of this instruction is that on the material points of conflict it is too general and furnishes no guidance, and insofar as it is specific it deals only with narrow and technical matters of procedure. Under this instruction, plaintiffs could not prevail unless they could show by the greater weight of the evidence that the procedure followed by the Conference "was the *only* procedure known to this Conference in determining disputes of this nature." This instruction requires the jury to answer the issue "no" if it finds any deviation from usual procedures. The instruction as a whole leaves the jury to conjecture as to the essential elements to be proved by plaintiffs. The court failed to present certain essential aspects of the case to the jury, and the verdict was therefore inconclusive.

What the essential elements in controversy are must be determined by the pleadings and the evidence offered in support thereof. "It is the duty of the court to charge the law applicable to the substantive features of the case arising on the evidence without special request, and to apply the law to the various factual situations presented

by the conflicting evidence. . . . A charge which fails to submit one of the material aspects of the case presented by the allegation and proof is prejudicial." 4 Strong: N. C. Index, Trial, s. 33, pp. 331-2.

If the plaintiffs are to prevail, they must do so on the theory of the complaint and not otherwise. *Atkinson v. Atkinson,* 225 N.C. 120, 33 S.E. 2d 666; *Coley v. Dalrymple,* 225 N.C. 67, 33 S.E. 2d 477. Plaintiffs allege that a schism has arisen in the congregation of Edgemont Church, the Teasley faction has remained faithful to the dogma, polity and customs of the church as recognized and followed prior to the outbreak of dissension, the Miles faction has materially departed therefrom, the Western Conference is the highest church tribunal and had authority and jurisdiction to determine which is the true congregation, the Western Conference has heard and determined the controversy and has decided that the Teasley faction is the true congregation of Edgemont and the Teasley faction is entitled to the possession and use of the church property. Defendants deny that the Western Conference is the highest church tribunal and has authority and jurisdiction to decide between factions within the congregation of a member church, deny that any division existed within the Edgemont congregation, deny that the Miles faction is or has been unfaithful to the doctrines, polity and customs of the Original Free Will Baptists of North Carolina as accepted and followed by Edgemont before the alleged schism arose, and aver that the Miles faction was not given any notice of the charges against it, was not informed of the identity of its accusers, and was not given an opportunity to be heard in its defense.

The title to the church property is vested in "Trustees of Edgemont Free Will Baptist Church," and therefore the ownership and right to possession and use belong to those of the congregation who have remained faithful to the doctrines, polity and fundamental customs and rules of the Free Will Baptist denomination as accepted and followed by Edgemont's congregation prior to the alleged dissension. *Reid v. Johnston, supra.* It is not denied that the Western Conference has decided that the Teasley faction has remained true, is the true congregation, and is entitled to the church property, and the Miles faction has departed from the faith. The jury's answer to the first issue has, for the purposes of this lawsuit, established that the Western Conference is the highest church tribunal and had authority and jurisdiction to decide between the factions and "determine which faction should be recognized as the true congregation of said church," at the time it undertook to do so.

The judgment below will be vacated and a new trial had on the matters involved in the second and third issues submitted by the court below, that is, on the points of controversy raised by the pleadings and purportedly covered by these issues. The decision of the jury on the first issue submitted (that the Western Conference, at the time proceedings were had and decision was made by it, had final ecclesiastical authority and jurisdiction to decide between factions of the Edgemont Church congregation, and to determine which is the true congregation) will not be disturbed.

Issues arise upon the pleadings. *Darroch v. Johnson*, 250 N.C. 307, 108 S.E. 2d 589. If there is no material change in the pleadings and the purport of the evidence at the retrial of this case, the factual controversies may be more clearly resolved by submitting two questions to the jury in substantially the following form (we refer to these as "questions" in order that there may be no confusion as to whether we are referring to these proposed issues or the issues submitted at the former trial):

1. Were the conditions, circumstances and activities within the congregation of the Edgemont Church in 1960 and until January 18, 1961, such as to justify and invoke the exercise of the authority and jurisdiction of the Western Conference to decide between factions in the Edgemont Church?

2. Was the Miles faction given reasonable notice of the nature of the charges against it, the general identity of its accusers, and opportunity to be heard in its defense?

We hasten to say that the presiding judge at the retrial is not required to adopt the number, form and phraseology of the questions suggested by us. We cannot, of course, foresee what the developments of the trial will be. It is within the province of the trial judge to frame the issues, and when he has done so they will not be held for error if they are sufficiently comprehensive to resolve all factual controversies and to enable the court to enter judgment fully determining the case. *Rubber Co. v. Distributors*, 253 N.C. 459, 466, 117 S.E. 2d 479.

With respect to the first suggested question, the burden is on plaintiffs to satisfy the jury by the greater weight of the evidence that (1) a schism or division exists within the congregation of the Edgemont Church, consisting of the Teasley and Miles factions, and (2) Western Conference had substantial factual grounds upon which to base its decision that the Miles faction had departed from the doctrines, polity, usages and customs of the Free Will Baptist Denomination, as recognized and followed in the Edgemont Church prior to the time the al-

leged schism arose, and that the Teasley faction had remained faithful thereto. If, as defendants contend, there is no schism *within the congregation* of Edgemont Church, there was no basis for the Western Conference to exercise jurisdiction to decide between factions. Or if there is no substantial evidence (that is, not more than a mere scintilla) that the Miles faction was unfaithful to the doctrines, polity, usages and customs of the Free Will Baptist Denomination, as recognized and followed in Edgemont Church prior to the alleged schism, the Conference was acting beyond its authority and jurisdiction in deciding that the Teasley faction is the true congregation, to the exclusion of the Miles faction. To prevail on the first suggested question, plaintiffs must sustain both propositions (1) and (2), above in this paragraph. If the jury answers the question "no," defendants will be entitled to a judgment dismissing the action and dissolving the injunction; and if the question is answered "no," the jury need not consider or answer the second suggested question. But if the jury answers the question "yes," it must also consider and answer the second suggested question.

With respect to the second suggested question, the burden is on the plaintiffs to satisfy the jury by the greater weight of the evidence that the Western Conference, or the committee acting for it, gave defendants reasonable notice of the nature of the charges against them, the general identity of their accusers, and reasonable opportunity to be heard. The decision of an ecclesiastical court will not be recognized and sustained by the civil courts, where property rights are involved, if it acts arbitrarily and with manifest unfairness.

If both suggested questions are answered "yes," judgment will be entered declaring the Teasley faction entitled to the exclusive ownership, use and possession of the Edgemont Church property, and granting permanent injunctive relief. If the first suggested question is answered "yes," and the second "no," the court will enter an order directing the Western Conference to proceed to another hearing, according to its customs and practices, after notice to defendants of the nature of the charges and the accusers.

It is necessary for clarity that we again refer to the third issue submitted by the court at the trial below. It was purely formal; the jury's answer thereto does not determine the property rights involved. The court directed the jury: "If you answer issue No. 2 'no', then I instruct you, you will answer issue No. 3 'no.' " Thus, the answer to the third issue was made to depend directly upon the answer to the second issue. Since there was error affecting the second issue, the answer to the third issue is ineffective. The third issue was not necessary

to a determination of the case on its merits and was probably included that the issues might appear complete without reference to other parts of the record. It is optional with the trial court whether the third issue be submitted on the same terms when the case is again tried. It will perhaps be less confusing to the jury if it is omitted altogether.

After judgment had been entered in the case of *Teasley Faction and Western Conference v. Miles Faction* (our Docket No. 666), defendants moved for judgment in *Western Conference v. Creech* (our Docket No. 667) and in *Teasley Faction v. Creech* (our Docket No. 668). The court being of the opinion that the judgment in 666 resolved the controversies in 667 and 668, entered judgments for defendant Creech dissolving the temporary injunctions theretofore entered in these cases and dismissing the actions. We express no opinion as to whether the judgment in case 666, had it been sustained, would have resolved the issues in cases 667 and 668. Since there must be a partial new trial in case 666, the judgments entered in cases 667 and 668 must be vacated.

Case No. 666, Partial new trial.
Case No. 667, Reversed.
Case No. 668, Reversed.