CHARLIE PAUL, JOSEPH E. WILLIAMS, MILTON STYRON, THE BOARD OF DEACONS OF THE DAVIS ORIGINAL FREE WILL BAPTIST CHURCH; LESLIE STYRON, CLERK; REGINALD STYRON, TREASURER; ALL OFFICERS OF THE DAVIS ORIGINAL FREE WILL BAPTIST CHURCH; AND ROY STYRON AND GUY WILLIS, TRUSTEES OF THE SAID CHURCH; AND HARRY WILLIS, STERLING DIXON, ELMER WILLIS, WORDIE MURPHY, VAN WILLIS AND OTHERS OF THE DAVIS ORIGINAL FREE WILL BAPTIST CHURCH UNITED IN INTEREST AND PRESENTLY RECOGNIZED BY THE EASTERN CONFERENCE OF ORIGINAL FREE WILL BAPTISTS OF NORTH CAROLINA AS THE ONE AND ONLY VALID DAVIS ORIGINAL FREE WILL BAPTIST CHURCH, ALSO KNOWN AS THE. CHARLIE PAUL FACTION, v. CLINTON PINER, JULIUS WILLIS,. LLOYD DAVIS, ALL DEFENDANTS PURPORTING TO BE MEMBERS OF THE BOARD OF DEACONS OF THE DAVIS ORIGINAL FREE WILL BAPTIST CHURCH; AND LLOYD DAVIS, GRADY DAVIS, CLYDE STYRON, JOHNNIE DAVIS AND BOBBY DUDLEY, INDIVIDUALLY AND AS THE PURPORTED BOARD OF TRUSTEES OF THE DAVIS ORIGINAL FREE WILL BAPTIST CHURCH; AND T. O. TERRY, PURPORTED PASTOR OF THE DAVIS ORIGINAL FREE WILL BAPTIST CHURCH; AND RALPH LOWRIMORE AND OTHERS UNITED IN INTEREST WITH THE ABOVE NAMED DEFENDANTS AND KNOWN AS THE CLINTON PINER FACTION.

(Filed 24 July. 1967.)

1. **Appeal and Error § 59—**

An appeal from a judgment of nonsuit presents the question whether the evidence, considered in the light most favorable to plaintiff, is sufficient to be submitted to the jury, giving plaintiffs the benefit of all reasonable inferences which may be properly drawn from the evidence in their favor.

2. **Religious Societies § 3—**

Civil courts have no jurisdiction of purely ecclesiastical questions and controversies, and will inquire into ecclesiastical questions only to the extent necessary to determine the property rights of the contending parties.

3. **Religious Societies § 2—**

Where the congregation of a church is divided into two factions, title and the right to use the church property belong to that faction, whether a minority or majority, which remains faithful to the doctrines, policy and fundamental customs and rules of the denomination which were accepted and followed by the congregation prior to disagreement.

4. **Religious Societies § 3—**

The evidence disclosed that one faction of a congregation adhered to the national association of the denomination, while another faction adhered to the conference and the state convention of the denomination which had withdrawn from the national association, but there was no evidence of any specific acts of defendant faction which were contrary to the characteristic usages, customs, doctrines and practices of the. denomination accepted by both factions before dissension. *Held:* The evidence disdcloses a purely ecclesiastical dispute which is not justiciable by the courts, and nonsuit was properly entered.

LAKE, J., took no part in the consideration and decision of this case.

APPEAL by plaintiffs from a judgment of compulsory nonsuit entered at the close of plaintiffs' evidence by *Bundy, J.,* at the Regular 22 August 1966 Civil Session of CARTERET.

*John A. Wilkinson for plaintiff appellants.*
*Boyce, Lake & Burns by Eugene Boyce and Wheatly & Bennett by C. R. Wheatly, Jr., for defendant appellees.*

PARKER, C.J. This controversy has been before the Court on two previous occasions — at the 1965 Spring Term reported as *Conference v. Piner,* 264 N.C. 67, 140 S.E. 2d 721, and at the 1966 Spring Term reported under the same name in 267 N.C. 74, 147 S.E. 2d 581. In the former case the Eastern Conference of Original Free Will Baptists of North Carolina and its officers were parties plaintiff in addition to the plaintiffs now before the Court. The complaint sought relief against one defendant which did not similarly affect all other defendants. The Court held that there was a misjoinder of parties and causes, and reversed the order of the court below overruling defendants' demurrer. In the second case plaintiffs omitted their prayer for separate relief against one of the individual defendants, and sought the same relief against all defendants. Defendants appealed from the order overruling their demurrer, and asserted that their demurrer should have been sustained below for that two different plaintiffs, the Eastern Conference and the other plaintiffs, had pleaded two separate causes of action seeking different relief against the same defendants. The Court held that the demurrer was properly overruled. The judgment of the lower court was affirmed and the opinion suggested that the complaint be reformed to comply with the requirements of G.S. 1-122. *Conference v. Piner,* 267 N.C. 74, *supra.*

Plaintiffs reinstituted the action, deleting the Eastern Conference as a party plaintiff, and filed an amended complaint. Except for this change the pleadings are similar to those filed in the case reported in 267 N.C., *supra.*

Involved in the controversy are the Original Free Will Baptists of North Carolina hereinafter referred to as the Denomination, the Eastern Conference of Original Free Will Baptists of North Carolina hereinafter referred to as the Eastern Conference, the Davis Original Free Will Baptist Church hereinafter referred to as Davis Church, the State Convention of Original Free Will Baptists hereinafter referred to as the State Convention, the National Association of Original Free Will Baptists hereinafter referred to as the National Association, the Coastal Association of Original Free Will Baptists hereinafter referred to as the Coastal Association, the plain-

tiffs known as the Charlie Paul Faction who are, or claim to be, members (some officials) of Davis Church, and defendants known as the Clinton Piner Faction who are, or claim to be, members (some officials) of the Davis Church.

Plaintiffs' amended complaint is set forth in twenty-two pages in the record, and has attached thereto and made a part thereof voluminous exhibits of ecclesiastical documents. This complaint is characterized by verbose allegations of conclusions of law and meager factual averments. Plaintiffs' allegations are very briefly summarized as follows: That plaintiffs are recognized as the true congregation of the Davis Church by the Eastern Conference; that the Denomination was organized in this State in 1727, and has maintained a denomination with the same faith, customs, habits, and practices; that the Eastern Conference was organized in 1895 and exists under the constitution and by-laws of the Denomination and that it now represents eighty Free Will Baptist Churches; that the Davis Church was organized in 1876 under the constitution, by-laws, and discipline of the Denomination; that it was a charter member of the Eastern Conference; that it has remained an active member and has adhered to the customs, practices, and usages of the Denomination and has complied with rules of the church set out in its "Statement of Faith and Discipline" and has participated in programs and activities of the Eastern Conference and the State Convention; that prior to 1912 there existed a book of discipline for the Denomination which is now known as the "Statement of Faith and Discipline"; that the 1955 revision of this Statement was adopted by the Conference in 1955 and that this Statement is the official rule for determining the relationship between plaintiffs and defendants. Plaintiffs incorporate in their complaint the church covenant portion of the Statement of Faith and Discipline, and another section entitled "Independence of Churches" which begins with the statement "Each local church is a distinct and independent organization, with full authority to manage its own internal affairs, elect its officers, receive, dismiss, discipline, and exclude members", and concludes with the following: "The annual conference being the highest tribunal shall have final judgment over the local churches." Plaintiffs further allege that there is a connectional form of church government between the Davis Church and the Eastern Conference; that the constitution contained in the Statement of Faith and Discipline provides that the delegation from each church shall carry to the Conference or Association a statistical and financial report on the church; that the Eastern Conference has an executive committee and an examining board which ordains and disciplines ministers; that the Davis Church uses

Sunday School literature published by the Denomination; that the Davis Church enjoyed a peaceful and useful relationship with the Eastern Conference into the year 1960; that in 1960 a division and unrest appeared in the Church, led by the defendants; that the pastor resigned in August, 1960, and was succeeded by the defendant Terry in April, 1961; that defendant Terry began a campaign to take the Church out of the Eastern Conference and to basically change its organization, affiliations, customs, and practices; that in September, 1961, the Church voted not to send a delegate to the State Convention; that in October, 1961, it voted to send no delegate to the Carteret County Sunday School Convention.

Plaintiffs further allege that a special session of the State Convention was held in May, 1962; that the defendants succeeded in persuading the Church members not to send a delegate; that the defendants did this in furtherance of a design to take control of the Davis Church and remove it from its rightful place in the State Convention and in the Eastern Conference; that the defendant Terry wanted to align the Church with the Coastal Association which was created for the purpose of destroying the Eastern Conference and the Denomination and substitute a new order for the faith, practices, and customs of the Church; that the defendant faction caused a meeting to be held for the purpose of taking Davis Church out of the State Convention and taking its property, facilities, and membership and affiliating with the Coastal Association; that at this meeting the Church membership voted 63 to 48 to withdraw from the State Convention; that at a subsequent meeting of the official Board of Davis Church the plaintiffs asked that officials of the Eastern Conference be called for a meeting at the Church and the defendants refused to participate in the meeting; that the defendants have continued since then to assert dominion over the physical properties of the Church, have barred plaintiffs from it, and have defied all authority of the Eastern Conference and the State Convention; that plaintiffs brought these matters to the attention of the Eastern Conference; that the executive committee of the Eastern Conference made a preliminary finding that the plaintiffs were acting in accordance with the established regulations, customs, practices, usages, and doctrines of the Denomination; that subsequently a special investigative committee was appointed which found that a controversy existed; that the executive committee met again, recognized the plaintiff faction as loyal to the Denomination, granted them authority to function as the Church and declared that defendants were out of fellowship with the Eastern Conference and the Denomination.

PAUL *v.* PINER.

Continuing, plaintiffs allege that since that time the defendant faction has used the Church to the exclusion of plaintiff faction; that the plaintiff faction has held services in the Davis Community Building and has remained true to the customs and usages of the Eastern Conference and the Denomination; that in May, 1963, the executive committee of the Eastern Conference held a meeting for the purpose of bringing defendants back into the Church; that the defendants did not attend this meeting and the committee essentially repeated the findings and the actions taken by it earlier; that in June, 1963, the Davis Church controversy was referred to a special session of the Eastern Conference; that the Conference resolved to establish a trial committee and directed it to hold a hearing on the Davis Church controversy and let the defendants show cause why they should not be expelled from the Eastern Conference and why further action should not be taken against them; that the trial committee notified defendants of a hearing and advised them of the charges; and that the defendants continue to exercise exclusive control over the Church property in defiance of the Eastern Conference and the State Convention.

The prayer for relief is that the plaintiff faction be declared the true and rightful congregation of the Davis Church and entitled to the sole control over property of the Church, and that the defendant faction be permanently restrained from holding themselves out to be the true congregation of the Davis Church and from interfering in its operation.

The case came on for hearing at the August, 1966 Session. At the conclusion of the plaintiffs' evidence the defendants moved for judgment of involuntary nonsuit and from the order of the court allowing this motion, plaintiffs appealed.

An appeal from a judgment of nonsuit presents the question whether the evidence, considered in the light most favorable to plaintiff, is sufficient to be submitted to the jury. 1 Strong, N. C. Index 2d, Appeal and Error, § 59; *Thames v. Teer Co.,* 267 N.C. 565, 148 S.E. 2d 527. Plaintiffs are entitled to all reasonable inferences in their favor which properly may be drawn from the evidence. *McDonald v. Heating Co.,* 268 N.C. 496, 151 S.E. 2d 27.

Plaintiffs' evidence, though not as voluminous, comparatively, as the pleadings, equals the pleadings in legal conclusions. The evidence is abundant of the existence of factions, and of church organizations, conventions, associations, and conferences. On the crucial issues, however, the evidence is totally lacking.

The civil courts have no jurisdiction over, nor concern with, purely ecclesiastical questions and controversies. However, where

the controversy involves property rights, the courts will inquire into ecclesiastical questions to the extent necessary to determine such rights. *Conference v. Piner*, 267 N.C., *supra; Conference v. Miles*, 259 N.C. 1, 129 S.E. 2d 600; *Conference v. Creech*, 256 N.C. 128, 123 S.E. 2d 619; *Reid v. Johnston*, 241 N.C. 201, 85 S.E. 2d 114. Where factions are involved, the courts will determine which is the true congregation by virtue of adherence to the articles of faith and polity and the customs and usages of the denomination. *Conference v. Creech, supra*. In such cases the right to possession and use of the property belongs to those of the congregation who have remained faithful to the doctrines, polity and fundamental customs and rules of the denomination accepted and followed by the congregation prior to the disagreement. *Conference v. Miles, supra*. "The title to the church property of a divided congregation is in that part of it [whether a minority or a majority] which is acting in harmony with its own law; and the ecclesiastical laws, usages, and principles which were accepted among them before the dispute began are the standards for determining which party is right." *Schnorr's Appeal*, 67 Pa. 138, quoted with approval in *Dix v. Pruitt*, 194 N.C. 64, 138 S.E. 412, and also in *Conference v. Piner*, 267 N.C., *supra*. As in *Reid v. Johnston, supra*, the question presented is whether defendants have diverted the property to the support of usages, customs, doctrines and practices radically and fundamentally opposed to the characteristic usages, customs, doctrines, and practices recognized and accepted by both factions of the congregation before the dissension between them arose. For one faction in the church to be entitled to its property to the exclusion of the other faction there must be a showing that one faction has remained true to the doctrines, polity, usages, and customs of the Denomination as recognized and followed in the church prior to the time of disagreement and that the other faction has departed from such doctrines and practices. *Conference v. Miles, supra*.

There is ample evidence in the record to show that some type of controversy existed between the factions of the Davis Church. However, there is no substantial evidence from which a jury could determine the existence of a doctrinal dispute. For example, plaintiffs' witness Reginald Styron testified that at a special conference of the Davis Church in July 1960 it was resolved to uphold Rev. Randy Cox, pastor of the Beaufort Church in his refusal to sign a pledge of loyalty demanded by Eastern Conference. The pastor of Davis Church departed the following month and the defendant Terry came to Davis Church as pastor in April 1961. Styron further testified that between these two dates, "It became evident that two factions

PAUL *v.* PINER.

were developing along two different lines of thinking in the church."
There is nothing in the record to indicate what these two lines of
thinking were.

The pleadings imply the existence of a conspiracy on the part
of members of the defendant faction to divert the Davis Church
from the faith which it formerly followed. If any such conspiracy
existed, it never resulted in any outward action revealed in the evi-
dence. The only revealed basis for the disagreement is a dispute
which existed at higher echelons in the Denomination. At the 1961
meeting of the National Association certain delegates from North
Carolina were removed from office. At the subsequent State Con-
vention, the Convention voted to withdraw from the National As-
sociation. The Eastern Conference also withdrew from the National
Association. The 1961 Eastern Conference meeting refused to seat
certain delegates and the pastor from Davis Church who had voted
in 1961 for the National Association position at the National meet-
ing or at the State Convention. This culminated in a called busi-
ness meeting which was held on April 8, 1962. The Church Bulletin
for April 1, 1962, carried the following announcement: "A called
business meeting is announced for next Sunday, April 8th, follow-
ing the morning worship service. Due to the action taken by the
State Convention in withdrawing fellowship from the National As-
sociation, it becomes necessary for the local church to determine its
standing with those two bodies." At the meeting a Motion was made
and seconded to place the Davis Church on the side and in fellow-
ship with the National Association. The Motion was carried by vote
of 63 to 48. Another witness testified that the Motion was "I move
we go with the National."

The evidence indicates that individual Free Will Baptist Churches
in North Carolina, including Davis Church, had been in the prac-
tice of sending delegates to the National Association. It appears that
the Davis Church, the Eastern Conference, and the State Conven-
tion, through the National Association supported joint church projects,
such as the Bible College, missions, and a superannuated wage fund
prior to the dispute in controversy. Subsequent to this dispute the
Eastern Conference and some Free Will Baptist Churches supported
separate but similar institutions and programs. Thus the defendant
faction, as a result of the majority vote at a duly called meeting,
now follows the practices of the National Association which were
formerly followed by both factions in the Davis Church, the East-
ern Conference and the State Convention, while the plaintiff faction
has adopted or continued separate, but similar practices, and re-
mains loyal to the Eastern Conference and the State Convention.
These matters demonstrate the wisdom of the courts in refusing to

exercise jurisdiction over purely ecclesiastical questions and controversies.

The evidence shows that the plaintiff faction turned over the church records and the bank account to the defendant faction, that the defendant faction agreed to assume the church indebtedness, that no member of the plaintiff faction has been called upon to make a payment on the church indebtedness since the transfer, and that no member of the plaintiff faction has made any attempt to hold services in the Davis Church building since that time.

After a careful and thorough examination of the record, we hold that there is no evidence from which a jury could find that the defendant faction has diverted the church property to the support of usages, customs, doctrines and practices substantially and fundamentally opposed to the characteristic usages, customs, doctrines, and practices recognized and accepted by both factions before the dissension arose.

Affirmed.

LAKE, J., took no part in the consideration and decision of this case.