R. E. ATKINS, TRUSTEE OF LITTLE MOUNTAIN BAPTIST CHURCH, AND GLADYS CUMMINGS, MAJOR F. CUMMINGS, LARRY ATKINS, ROBIN ATKINS, JOAN ATKINS, GARRY ATKINS, PAULINE ATKINS, MOIR ATKINS, DWIGHT ATKINS, BARBARA HICKS, RICKY HICKS, HERMAN HICKS, ETHEL ATKINS, MAYE ATKINS, MICIE WATSON, LEOLA KEY, KATHY KEY, POSEY SAWYERS, MAMIE SAWYERS, MYRTLE KEY, PAUL KEY, ALMA C. JOHNSON, BOBBY JOHNSON, GERTRUDE JOHNSON, TOMMY JOHNSON AND J. C. JOHNSON

v.

C. L. WALKER, RAYTON PUCKETT, HARVEY JOHNSON, LONNIE JOHNSON, BOBBY BRUNER, ELBERT WATSON, GRAHAM TILLEY, FRANK HOLIFIELD, CLAY GIBSON, WORTH BASS, MABLE CREED, ROSCOE CREED, FRANKIE LAWSON, CLYDE LAWSON, DAVID BUSSICK AND FRANCES VENABLE

### No. 69

### (Filed 12 December 1973)

1. **Constitutional Law § 22; Religious Societies and Corporations § 2— right to use church property — departure from church doctrine — First Amendment**

    The First Amendment forbids a determination of rights to use and control church property on the basis of a judicial determination that one group of claimants has adhered faithfully to the fundamental faiths, doctrines and practices of the church prior to the schism, while the other group of claimants has departed substantially therefrom.

2. **Religious Societies and Corporations § 3— right to use church property — function of courts**

    In an action to determine the right to use and control properties of a Missionary Baptist Church, the function of the courts is to determine, pursuant to neutral principles of law developed for use in all property disputes, (1) who constitutes the governing body of the particular Missionary Baptist Church, and (2) who the governing body has determined to be entitled to use the properties.

3. **Religious Societies and Corporations § 2— Missionary Baptist Church — governing body**

    The governing body of a Missionary Baptist Church is its congregation and the determinations of that body are properly to be made in a meeting of the congregation in which every member, irrespective of age, sex or other circumstance, is entitled to vote, a majority vote determining the question.

4. **Religious Societies and Corporations § 2— actions taken by vote of congregation**

    The congregation of a Missionary Baptist Church had the right, by majority vote in a duly called and conducted meeting, to adopt a constitution and bylaws for its own government, to call to its pastorate the man of its choice, to disassociate the church from other

Baptist churches and organizations thereof and determine what contributions, if any, it would make to activities of such associations, and to determine what literature, if any, should be used in its Sunday School and other activities.

5. **Religious Societies and Corporations § 3— right to use church properties — action by minority group**

A minority group of a Missionary Baptist Church may contest the validity of an action of the congregation, affecting such minority's right to use the church properties and to participate in the activities of the church, by showing that such action was not taken in a meeting duly called and conducted according to the procedures of the church, themselves properly adopted and then in effect.

6. **Religious Societies and Corporations § 3— right to use church property — issues**

Issues as to departure from church doctrine and practices by one faction or the other were not proper for determination by judicial proceedings in controversies concerning the right to use and control church property.

APPEAL by plaintiffs from the decision of the Court of Appeals, reported in 19 N.C. App. 119, 198 S.E. 2d 101, reversing the judgment of *Crissman, J.,* entered at the 29 May 1972 Session of SURRY.

The plaintiffs allege that they are members of the Little Mountain Baptist Church, one being a deacon and trustee. The defendant Puckett is the former pastor, the defendant Walker is the present pastor and the other defendants are members of the church. The prayer of the complaint is that the plaintiffs be declared the true congregation, that the defendant Walker be restrained from continuing to act as its pastor and that the defendants be enjoined to surrender to the plaintiffs the parsonage and the church building.

The complaint alleges that a division has arisen between the members of the church, that the plaintiffs have remained faithful to the characteristic usages, customs, doctrines and practices accepted by all members prior to the division, and that the defendants have departed radically and fundamentally therefrom in numerous specified respects, including: The adoption of a constitution; the severing of all relations with the Surry Baptist Association, the Baptist State Convention and the Southern Baptist Convention; the cutting off of support for the programs and institutions of such Association and Conventions; the support of missionary activities and other activities independent thereof; and the use of Sunday School and church

literature published by and obtained from a source independent of such Association and Conventions. The complaint further alleges that the defendants are attempting to set up a dictatorship in the pastor and have attempted to remove the names of the plaintiffs and others from the church rolls.

The defendants first filed a motion to dismiss the action for want of jurisdiction over the subject matter, asserting, "This action is in violation of Article I, Section 13 of the North Carolina Constitution and the First Amendment to the United States Constitution." This motion was overruled.

The defendants then filed answer, preserving the jurisdictional question and alleging further that the action should be dismissed as to the defendant Puckett for that he is no longer either the pastor or a member of the church. The answer further alleges that the church is an autonomous body, controlled by a majority of its members, being "a fundamental Missionary Baptist Church," that the defendants have faithfully adhered to the faith and customs of such church and the plaintiffs have not remained true thereto but have abandoned the church and have contributed nothing to it for a period of five years or more.

The following issues were submitted to and answered affirmatively by the jury:

"1. Did the Plaintiffs remain faithful to the doctrines and practices of the Little Mountain Baptist Church recognized and accepted by the Plaintiffs and Defendants prior to the division?

"2. Have the Defendants departed radically and fundamentally from the characteristic usages, customs, doctrines and practices of the Little Mountain Baptist Church accepted by all members prior to the division as alleged in the complaint?"

The Superior Court, thereupon, adjudged that the true congregation of the church consists of the plaintiff (sic) and all other members of the congregation who adhere to and submit to the characteristic doctrines, usages, customs and practices of the church recognized and accepted by both factions of the congregation before the dissension arose; that the defendants are enjoined to vacate and surrender to the plaintiffs the properties in question; and that the defendant Walker is restrained from acting as pastor of the church or from acting for it in any capacity.

The Court of Appeals reversed and remanded the matter to the Superior Court for proceedings not inconsistent with its opinion, Judge Britt, dissenting, the basis for the decision being that the Superior Court had based its judgment upon the determination of an issue which may not constitutionally be inquired into by a civil tribunal.

The plaintiffs introduced evidence to the following effect:

The land on which the church and the parsonage stand was given by the father of the plaintiff R. E. Atkins. (The record does not show whether this was by will or deed, the terms of the conveyance or whether title was conveyed to trustees.)

The division of the church developed during the pastorate of the defendant Puckett, who is no longer a member of the church. It began as a result of his pronouncements concerning the relative authorities of the pastor and the deacons. Prior thereto, the church was in fellowship with the Surry Baptist Association and the Southern Baptist Convention, making contributions thereto and using Sunday School and church literature received therefrom. All matters coming before the church, including the calling and dismissal of a pastor, were then determined by a majority vote of the congregation, any member being entitled to vote. The only requirement for membership in good standing was "to believe that Jesus Christ was [sic] the Son of God." Thereafter, Mr. Puckett was given a vote of confidence, by the standing vote of a majority of those present at a church conference, some of those standing in support of the motion being nonmembers, some of these being small children. (The witness stated he did not know whether such nonmembers were counted by those who tallied the votes.)

After the dissention arose and after the termination of the pastorate of Mr. Puckett, a representative of the Surry Association (Mr. Bradley) made certain recommendations designed to reunite the church, including the adoption of a constitution. At least some of these recommendations were adopted by the church. (The evidence is in conflict and in confusion as to whether the constitution adopted by the church was that recommended by Mr. Bradley. He testified it was not.)

The Surry Baptist Association does not recommend any particular form of constitution to churches affiliated with it. Different churches have differing constitutions. All Missionary

Atkins v. Walker

Baptist churches are autonomous and the Association has no control over any church.

Prior to the adoption of the present constitution, the church had none. The constitution provides that the church shall be a Missionary Baptist church, that its members subscribe to the declaration of faith set forth in the New Hampshire Confession of Faith. In a number of respects it prescribes qualifications for holding various offices in the church, including the pastorate, which had not theretofore been required. A new provision is to the effect that a member absenting himself from the regular services without good cause, for three months becomes an inactive, nonvoting member and one absenting himself, without good cause, for one year automatically ceases to be a member.

After the dissension arose, the church ceased to be associated with the Surry Baptist Association and the Southern Baptist Convention. Affiliation of a church with either of these bodies is voluntary.

After the dissension arose, after the adoption of the constitution and after the termination of the pastorate of the defendant Puckett, the defendant Walker became a member and the pastor. He was elected by a majority (standing) vote. Prior to the taking of the vote, it was announced (in accordance with the constitution) that those "who hadn't been there in three months" could not vote.

During the pastorate of the defendant Walker, the church has ceased to use literature published by the Southern Baptist Convention and has used more "fundamentalist" literature published by an independent publishing company.

At the close of the plaintiffs' evidence, the defendants moved for a directed verdict, which motion was denied.

The defendants then introduced evidence to the following effect:

The defendant Walker has not attempted to change the church from a Missionary Baptist church into one of another kind. Sunday School literature now used in the church and that published by the Southern Baptist Convention both use the same scripture selections, but the interpretations thereof are different. The church is not presently associated with the Southern Baptist Convention or with the Surry Baptist Association, having

Atkins v. Walker

been dismissed from fellowship by the Association. It is associated with a group of independent Baptist churches. This is in accordance with the wishes of Mr. Walker.

The church now makes regular, substantial contributions to mission programs of the independent Baptist churches with which it is affiliated but makes no contributions to the Southern Baptist Convention programs or those of the Surry Association.

The name of the church has not been changed. The plaintiffs are welcome to return to the church to worship with the congregation, but their votes in church meetings will not be counted until they make public apology to the church for their long continued absences from its services and for their having brought suit against it.

During Mr. Walker's pastorate, the church has taken no action, including the adoption of the change in Sunday School literature, except by the majority vote of the congregation. The doctrines of the church have not been changed. It is and always has been a Missionary Baptist church.

The constitution was adopted by a majority vote two years prior to the time Mr. Walker became pastor and the votes to call him to the pastorate were approximately 150 in favor to only two or three against extending the call, those voting in opposition being among the plaintiffs in this action.

Since the plaintiff group ceased attending the services of the church, the financial support of the church has substantially increased and so have its contributions to missions. The church debt has been retired. There has been no change in the type of teaching in the Sunday School or in the type of preaching at the services of the church since the dissension arose. The church formerly had a Woman's Missionary Society but this has been discontinued. The plaintiffs have not been taken off the church roll. The plaintiffs Atkins and Key were replaced as trustees of the church at their own requests.

The defendants renewed their motion for a directed verdict at the close of their evidence. The motion was again denied.

*White & Crumpler by James G. White and Michael Lewis for plaintiff appellants.*

*Seawell, Pollock, Fullenwider, Van Camp & Robbins by H. F. Seawell, Jr., for defendant appellees.*

LAKE, Justice.

In *Reid v. Johnston*, 241 N.C. 201, 85 S.E. 2d 114 (1954), this Court affirmed a judgment to the effect that a minority of the members of the North Rocky Mount Missionary Baptist Church were the true congregation thereof and entitled, as against the majority, to the use and possession of the church property. Speaking through Justice Parker, later Chief Justice, the Court recognized that, "nothing else appearing," the majority of the members of a self-governing Missionary Baptist church is entitled to control the church property. The Court then said:

"While it is true the membership of the North Rocky Mount Missionary Baptist Church is a self-governing unit, a majority of its membership is supreme and entitled to control its church property only so long as the majority remains true to the fundamental faith, usages, customs, and practices *of this particular church,* as accepted by both factions before the dispute arose. [Citations omitted.] [Emphasis added.]

"A majority of the membership of the North Rocky Mount Missionary Baptist Church may not, as against a faithful minority, divert the property of that church to another denomination, or to the support of doctrines, usages, customs and practices radically and fundamentally opposed to the characteristic doctrines, usages, customs and practices of that particular church, recognized and accepted by both factions before the dissension, for in such an event the real identity of the church is no longer lodged with the majority group, but resides with the minority adhering to its fundamental faith, usages, customs and practices, before the dissension, who, though small in numbers, are entitled to hold and control the entire property of the church."

As authority for this proposition the Court cited *Dix v. Pruitt,* 194 N.C. 64, 138 S.E. 412 (1927), which involved a controversy in a Primitive Baptist church concerning the calling to its pastorate of a minister who had been expelled by another Primitive Baptist church. According to the evidence in *Dix v. Pruitt, supra,* the then long established rule, apparently unwritten, of the Primitive Baptist denomination was that no Primitive Baptist church could call to its pastorate one who had been expelled from another Primitive Baptist church, until such person

was readmitted to the church which had so expelled him. In *Dix v. Pruitt, supra,* this Court held there was sufficient evidence in the record before it on the appeal to justify submitting to the jury this issue: "Were the plaintiff [the minority] and those united with them the *sole and only members* of the Dan River Primitive Baptist Church on 9 October 1923?" (Emphasis added.) The jury answered that issue in the affirmative. In affirming the judgment upon the verdict, this Court said, through Justice Brogden:

> "All Baptist Churches have the congregational system of government. They are independent sovereignties and exclusively self-governing units. * * * Hence, it must necessarily follow that a majority of the membership in any given congregation, *nothing else appearing,* is entitled to control the church property and direct and control the administrative affairs of the congregation. But it is equally true that each church or congregation is an orderly unit as well as a self-governing unit, and that there are certain fundamental faiths, immemorial customs and usages and uniform practices which form a part of the church life and constitute an integral part of its function. [Emphasis added.]

> "In other words, a majority in a Baptist Church is supreme, or a 'law unto itself,' so long as it remains a Baptist Church, or true to the fundamental usages, customs, doctrine, practice, and organization of Baptists. * * *

> "It is the duty of this Court to determine the merits of the controversy upon the record as presented. If the testimony in this particular record is to be believed, then there is a limitation to the independent sovereignty of a Primitive Baptist Church, and that limitation is the order, practice, and doctrine of the denomination; or, to state the proposition differently, according to the testimony in the record before us, a Primitive Baptist Church is a sovereign, self-governing unit so long as it remains in the order, practice, and doctrine prescribed by the written and unwritten law."

It will be observed that in *Reid v. Johnston, supra,* this Court applied to a Missionary Baptist church the rule laid down in *Dix v. Pruitt, supra,* concerning a Primitive Baptist church, with the modification that in the Missionary Baptist church the determinative faiths, doctrines and practices are those of the

local church. It is also to be noted that, according to the record in *Dix v. Pruitt, supra,* the Primitive Baptist churches, collectively, exercised some measure of control over who might be called to the pastorate of a local church. Thus, the Primitive Baptist churches were shown by the record in *Dix v. Pruitt, supra,* to be, in part, connectional in their government. A denomination may be, in its government, congregational in part and connectional in part. See *Conference v. Creech,* 256 N.C. 128, 140, 123 S.E. 2d 619, which involved a Free Will Baptist church. In this respect, and in others, there are differences between the several bodies of Baptist churches. Missionary Baptist churches are completely congregational in government. See: Baker, a Baptist Source Book (Broadman Press, 1966), p. 200; Annual of the Southern Baptist Convention, 1925, pp. 71-76, Article 22; Annual of Southern Baptist Convention, 1963, pp. 261-281, Article XIV; McDaniel, The People Called Baptists (published by Sunday School Board of the Southern Baptist Convention, 1925), pp. 43, 48; Encyclopedia of Southern Baptists (Broadman Press, 1958), pp. 140, 148, 277, 281; Semple, History of the Rise and Progress of the Baptists in Virginia (Beale's Edition, 1894), p. 62; Ryland, The Baptists of Virginia (1955), p. 205-6; Paschal, History of North Carolina Baptists (published by the General Board, North Carolina Baptist State Convention, 1930), p. 7.

The rule thus stated in *Dix v. Pruitt, supra,* was, itself, a departure from *Trustees v. Seaford,* 16 N.C. 453 (1830), apparently the first case to reach this Court concerning rights in the property of a divided church, in that instance a Lutheran church. There, this Court, then consisting of Chief Justice Henderson and Justices Hall and Ruffin, speaking through Justice Hall, after expressing the opinion that the grantor in the deed to the church would have had no claim, said:

"If the grantor has no right, on what foundation does the plaintiffs' claim rest? It appears that they are seceders from the church, and are not the trustees or representatives of it; that they were a minority of the members before their secession. Had they remained in the church, they must have yielded to the government of the majority. Much less can they have any control over it when they are no part of it. * * *

"With respect to the allegation made by the plaintiffs that the defendants, or the church which they represent,

have strayed from the true faith, or that errors have crept into the church government, the answer is that on that question it is not for them nor this Court to decide."

The above quoted pronouncements by this Court in *Reid v. Johnston, supra,* and in *Dix v. Pruitt, supra,* have been relied upon and followed in a number of more recent decisions of this Court. See: *Paul v. Piner,* 271 N.C. 123, 155 S.E. 2d 526 (1967) (Free Will Baptist)`; *Conference v. Piner,* 267 N.C. 74, 147 S.E. 2d 581 (1966) (Free Will Baptist); *Conference v. Miles,* 259 S.E. 2d 600 (1963) (Free Will Baptist).

An earlier dictum in *Kerr v. Hicks,* 154 N.C. 265, 70 S.E. 468 (1911) (Missionary Baptist), cited with approval in *Western North Carolina Conference v. Tally,* 229 N.C. 1, 47 S.E. 2d 467 (1948) (Christian), states, "In church organizations, those who adhere and submit to the regular order of the church, local and ·general, though a minority, are the true congregation." This is a quotation from Roshi's Appeal, 69 Pa. 462, which dealt with a controversy in the German Reformed Church, a connectional denomination. The only other authorities cited by this Court in *Kerr v. Hicks, supra,* in support of this statement are *Gable v. Miller,* 10 Paige 627 (N.Y. Chancery Court, 1844), which also concerned a controversy in the German Reformed Church, and *General Assembly of Free Church of Scotland et al. v. Overtoun et al.,* L. R. 1904, Appeal Cases 515 (House of Lords, 1904), which dealt with a controversy in the Free Church of Scotland, a connectional denomination. Thus, the cited authorities for the quoted statement dealt with situations quite different from that presented by a division among the members of a local church having a completely congregational government.

In 1969 the Supreme Court of the United States rendered its decision in *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, et al,* 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed. 2d 658. In that case two local Presbyterian churches in Georgia withdrew from the hierarchical general church organization due to their belief that certain actions and pronouncements of the general church were violations of that organization's constitution and were departures from doctrines and practices in force at the time of the affiliation of the two local churches with the general church. The ministers of the two local churches and the majority of the ruling elders thereof renounced the jurisdiction and authority of the general church over them. A commission of the general

Atkins v. Walker

church proceeded to take over the properties of the local churches, which filed suits to enjoin the general church from trespassing. The trial court submitted the case to the jury on the theory that the law of Georgia implies a trust of local church property for the benefit of the general church on the sole condition that the general church adhere to its tenets of faith and practice existing at the time of affiliation by the local churches. The jury returned a verdict for the local churches and the trial court, thereupon, adjudged that the implied trust had terminated, and enjoined the general church from interfering with the use by the plaintiffs of the properties in question. The Supreme Court of Georgia affirmed. The Supreme Court of the United States reversed the decision of the state court, saying, through Mr. Justice Brennan:

"The question presented is whether the restraints of the First Amendment, as applied to the States through the Fourteenth Amendment, permit a civil court to award church property on the basis of the interpretation and significance the civil court assigns to aspects of church doctrine. * * *

"It is of course true that the State has a legitimate interest in resolving property disputes, and that a civil court is a proper forum for that resolution. Special problems arise, however, when these disputes implicate controversies over church doctrine and practice. * * *

"Thus, the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded. But First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in

matters of purely ecclesiastical concern. Because of these hazards, the First Amendment enjoins the employment of organs of government for essentially religious purposes [citations omitted]; *the amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine.* * * * [Emphasis added.]

"The Georgia courts have violated the command of the First Amendment. * * * [T]he departure-from-doctrine element of the Georgia implied trust theory requires the civil court to determine matters at the very core of a religion— the interpretation of particular church doctrines and the importance of those doctrines to the religion. Plainly, the First Amendment forbids civil courts from playing such a role.

" * * * The departure-from-doctrine approach is not susceptible of the marginal judicial involvement contemplated in *Gonzalez* [*v. Archbishop,* 280 U.S. 1, 74 L.Ed. 131, 50 S.Ct. 5 (1929)]. Gonzalez' rights *under a will* turned on a church decision, the Archbishop's, as to church law, the qualifications for the chaplaincy. It was the Archbishopric, not the civil courts, which had the task of analyzing and interpreting church law in order to determine the validity of Gonzalez' claim to a chaplaincy. Thus, the civil courts could adjudicate the rights under the will without interpreting or weighing church doctrine but simply by engaging in the narrowest kind of review of a specific church decision— i.e., whether that decision resulted from fraud, collusion, or arbitrariness. Such review does not inject the civil courts into substantive ecclesiastical matters." (Emphasis added.)

The decision of the Supreme Court of the United States upon the applicability and meaning of a provision of the United States Constitution for litigation in state courts is, of course, controlling.

It follows that the above quoted passages from the opinions of this Court in *Reid v. Johnston, supra,* and *Dix v. Pruitt, supra,* may no longer be deemed authoritative in litigation concerning the use and control of church property when a division has arisen in the membership of the church. This is true whether the government of the church in question be congregational or connectional.

[1] It nevertheless remains the duty of civil courts to determine controversies concerning property rights over which such courts have jurisdiction and which are properly brought before them, notwithstanding the fact that the property is church property. Neither the First Amendment to the Constitution of the United States nor the comparable provision in Article I, Section 13, of the Constitution of North Carolina deprives those entitled to the use and control of church property of protections afforded by government to all property owners alike, such as the services of the Fire Department, police protection from vandals and trespassers or access to the courts for the determination of contract and property rights. It is expressly so noted in the above mentioned decision of the Supreme Court of the United States. See also, *Everson v. Board of Education,* 330 U.S. 1, 16, 67 S.Ct. 504, 91 L.Ed. 711 (1947). What is forbidden by the First Amendment, as now interpreted, is a determination of rights to use and control church property on the basis of a judicial determination that one group of claimants has adhered faithfully to the fundamental faiths, doctrines and practices of the church prior to the schism, while the other group of claimants has departed substantially therefrom. Pressed to its logical conclusion, such a judicial inquiry becomes a heresy trial. Such trials may not properly be conducted by any civil court, state or Federal, in view of the First Amendment to the United States Constitution and Article I, Section 13, of the Constitution of North Carolina.

We are not here concerned with the construction and enforcement of the provisions of a deed or will creating an express trust for the benefit of members of a religious congregation adhering to specified doctrines or practices or organizational affiliations. In this respect, the present case is distinguishable from *Western North Carolina Conference v. Tally, supra; Williams v. Williams,* 215 N.C. 739, 3 S.E. 2d 334 (1939); and *Nash v. Sutton,* 117 N.C. 231, 23 S.E. 178 (1895). Likewise, we do not have before us a claim of a grantor, or his representatives, or of the heirs or residuary legatee of a testator, that the title to the property conveyed or devised to a religious body has reverted to him, or them, by reason of the termination of a defeasible fee or the termination of a trust. See *Trustees v. Seaford, supra.*

The record below us does not show how the Little Mountain Baptist Church acquired title to, or a beneficial interest in,

the property, except that the land on which the buildings have been erected was "given" by the father of one of the plaintiffs. The clear inference in the record is that the church has named trustees, pursuant to G.S. 61-1, who hold the legal title but have no right of control "as against the governing body of the church." See *North Carolina Christian Conference v. Allen,* 156 N.C. 524, 72 S.E. 617 (1911). Thus, the right to use and control the properties is in "the governing body" of the Little Mountain Baptist Church.

[2] The function of the courts in this litigation is to determine: (1) Who constitutes the governing body of this particular Missionary Baptist church, and (2) who has that governing body determined to be entitled to use the properties. These determinations must be made pursuant to "neutral principles of law, developed for use in all property disputes." *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, et al, supra.* That is, these questions must be resolved on the basis of principles of law equally applicable to the use of properties of an unincorporated athletic or social club.

[3] It is clearly shown in the record that, prior to the commencement of the dissension in the church, it was, in organization, a typical Missionary Baptist church. Consequently, its governing body was its congregation and the determinations of that body were properly to be made in a meeting of the congregation in which every member, irrespective of age, sex or other circumstance, was entitled to vote, a majority vote determining the question.

"A Baptist church is a democracy in which every member has an equal voice." Paschal, History of North Carolina Baptists (1930), p. 8. "In a Baptist church equal suffrage is the right of young and old, rich and poor, male and female. Every member is entitled to a voice and vote. * * * Today, Baptist churches have absolute control over their affairs and elect their own officers as did those in the days of the apostles." McDaniel, The People Called Baptists (1925), pp. 43, 48. "Each local church is a self-governing unit. No outside authority, board, conference, association, convention, or individual can exercise authority over the affairs of a Baptist church. * * * Baptist churches are related to other Baptist churches in associations, conventions and alliances; but this relation is purely voluntary and advisory. Within the membership of a church all are equal. * * * Operating

as a simple democracy, the church decides matters by the vote of the congregation after full, free and open discussion. Under Baptist procedure the majority rules. * * * Participation in the affairs of the denomination by any church is voluntary. The church may identify itself with the denomination or withdraw such identification. The church may co-operate with any program of the denomination or refuse to co-operate." Encyclopedia of Southern Baptists (1958), p. 148. "Early Baptists and their successors have also consistently defended the doctrine of the autonomy of the local church. Each local congregation within the Baptist fellowship is competent to order its own affairs under the leadership of the Holy Spirit. * * * The local church is free to purge itself by means of spiritual discipline of unworthy or heretical members." Encyclopedia of Southern Baptists (1958), p. 281.

[4]   Thus, the governing body of the Little Mountain Baptist Church before the dissension therein arose, and now, was and is the congregation of that church. It had the right, by a majority vote, in a duly called and conducted meeting of the congregation, to adopt a constitution and bylaws of its own choice for its own government and to call to its pastorate the man of its choice. By a constitution, so adopted, it could impose reasonable limitations upon the right to vote in its meetings. By a vote of a majority in a meeting duly called and conducted, according to its own established procedures, it could disassociate itself from other Baptist churches and organizations thereof and could determine what contributions, if any, it would make to any or all activities of such associations. By a majority vote in a meeting duly called and conducted, according to its own properly adopted procedures, it could determine what literature, if any, should be used in its Sunday School and other activities.

[5]   It is open to a minority group, however small, to contest the validity of an action of the congregation, affecting such minority's right to use the church properties and to participate in the activities of the church, by showing that such action was not taken in a meeting duly called and conducted according to the procedures of the church, themselves properly adopted and then in effect. "Where civil, contract or property rights are involved, the courts will inquire as to whether the church tribunal acted within the scope of its authority and observed its own organic forms and rules." *Conference v. Creech, supra; Conference v. Miles, supra; McDaniel v. Quakenbush*, 249 N.C.

31, 105 S.E. 2d 94 (1958) ; 66 AM. JUR. 2d, Religious Societies, § 46; 76 C.J.S. Religious Societies, § 86.

There are allegations in the complaint, and there is evidence in the record, that at some meetings of the congregation, when standing votes were taken, persons not members stood with the majority, but there is no allegation or evidence that on any of these occasions the question was not carried by a majority of persons eligible to vote thereon. There is nothing in the record to suggest that any action of which the plaintiffs complain was not taken at a meeting of the congregation duly called, convened and conducted according to the properly established procedures of the church then in effect.

[6]  In fairness to the learned trial judge, it should be stated that the issues submitted to the jury were consistent in form with the above quoted passages in *Reid v. Johnston, supra,* and in *Dix v. Pruitt, supra.* However, in the light of *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church et al, supra,* we now hold that these issues are not proper for determination by judicial proceedings in controversies concerning the right to use and control church property.

The Court of Appeals properly reversed the judgment of the Superior Court and remanded the matter for further proceedings. These will be not inconsistent with the opinion of the Court of Appeals or with this opinion.

Affirmed.