George JACOBS, Plaintiff,

v.

**MALLARD CREEK PRESBYTERIAN CHURCH, INC., Presbytery of Charlotte, Inc., Dr. Alan Elmore, Karen Bohr, Melony Brown and Ramona Suire, Defendants,**

### No. 3:02CV9–MU.

United States District Court, W.D. North Carolina, Charlotte Division.

June 20, 2002.

Christian R. Troy, W. Frank Porter, Helms & Henderson, P.A., Charlotte, NC, for George Jacobs.

E. Fitzgerald Parnell, III, Parmele P. Calame, Poyner & Spruill, Charlotte, NC, Steven A. Rowe, Poyner & Spruill, L.L.P., Rocky Mount, NC, for Mallard Creek Presbyterian Church, Inc., Karen Bohr, Ramona Suire.

Julian Hugh Wright, Jr., Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, E. Fitzgerald Parnell, III, Parmele P. Calame, Poyner & Spruill, Charlotte, NC, Steven A. Rowe, Poyner & Spruill, L.L.P., Rocky Mount, NC, for Presbytery of Charlotte.

Parmele P. Calame, Poyner & Spruill, Charlotte, NC, John T. Jeffries, Mcangus, Goudelock & Courie, Charlotte, NC, for Alan Elmore.

John T. Daniel, Charlotte, NC, for Melony Brown.

## ORDER

MULLEN, Chief Judge.

This matter is before the court upon Defendant Mallard Creek Presbyterian

Church's ("Mallard Creek") Motion to Dismiss for lack of subject matter jurisdiction. Defendants move to dismiss Plaintiff's complaint on the grounds that the court is forbidden from inquiring into matters relating to the church's internal government and judicial process pursuant to the First Amendment of the Constitution.

## FACTS

Plaintiff Jacobs is a Presbyterian minister who formerly served as the Senior Pastor at Mallard Creek. The church represents but a segment of a large hierarchy headed by the General Assembly for the Presbyterian Church (U.S.A.). Governing all branches of the Presbyterian Church (U.S.A.) is the *Book of Order.*

Plaintiff Jacobs was employed at Mallard Creek from December 1996 until January 2001. During that time, formal allegations of misconduct, including sexual misconduct, were filed against Jacobs. He denies any involvement. Upon hearing of these allegations,[1] members of the church's investigation committee entered Jacobs's office and attempted to access information on his laptop computer. There is dispute as to whether such information was actually retrieved. Moreover, there is dispute as to the ownership of the laptop computer. The Complaint refers to "the Plaintiff's laptop," where the answer refers to the laptop as "the computer owned by Mallard Creek Presbyterian Church." Furthermore, the Clerk of the Presbytery of Charlotte (the local governing branch of the Presbyterian Church), Dr. Alan Elmore, disclosed the allegations to Plaintiff's wife and noted that a session meeting would be called pursuant to the *Book of Order* to discuss the allegations brought against Plaintiff.

Mallard Creek announced to the congregation, and soon thereafter published, news of the allegations, without disclosing their contents. On January 2, 2001, Jacobs resigned from his position as Senior Pastor. Mallard Creek accorded Jacobs a severance package. On that same day, two letters, a resignation letter from Jacobs and an accompanying letter penned by Mr. Killian, Clerk of Sessions, was sent to the entire congregation. Mr. Killian's letter further informed the congregation that allegations had been brought against Jacobs, yet refrained from naming them specifically. Killian's letter, like that of Jacobs, stated that Jacobs' resignation was due to illness. It also enumerated the allowances granted by the severance agreement.

Plaintiff contends that Mallard Creek violated the procedural requirements set forth in the Book of Order. Defendants deny these allegations.

Plaintiff Jacobs seeks relief from 1) violation of right to privacy, 2) slander, which subjected him to ridicule, embarrassment and emotional distress and irreparably damaged his reputation, 3) violation of Titles I & II of the Federal Electronic Privacy Act, 4) intentional or negligent infliction of emotional distress, 5) breach of implied contract, and 6) defamation.

The first issue to be addressed deals with the First Amendment's guarantee of religious freedom from governmental interference. The court's scrutiny into matters of church affairs certainly implicates First Amendment analysis. If such inspection is determined to be a violation, then this court is forbidden from hearing the issues raised by the Plaintiff, as to do so would be constitutionally improper.

---

1.  Jacobs is alleged to have had sex with Melody Brown, a church member. Defendants also allege in their answer that Jacobs was accused of looking at pornography on the laptop computer in his office at the church.

## DISCUSSION

### I. Defendants' Motion to Dismiss:

Defendants move to dismiss Plaintiff's Complaint arguing that the court lacks jurisdiction to hear the claims asserted. Defendant first asserts that the court is forbidden from inquiring into matters relating to the church's internal government and judicial process under the Free Exercise Clause of the United States Constitution. Secondly, Defendants note that due to the "inherently religious nature of the decisions at issue," court inquiry into such matters would be violative of the Establishment Clause of the United States Constitution, as such inquiry would result in excessive government entanglement with religion.

### a. *Free Exercise Clause Analysis*

■ The Free Exercise Clause of the First Amendment promises that government will not prevent or attempt to prevent anyone from practicing his or her religion. Therefore, the civil courts may decide church disputes in some cases, such as in select property and employment discrimination disputes, but are prohibited from "resolving underlying controversies over religious doctrine." *The Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 710, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *see Dixon v. Edwards*, 290 F.3d 699 [2] (4th Cir.2002)("Under the constraints of the First Amendment, when a subordinate in a church hierarchy disputes a decision of the highest ecclesiastical tribunal, the civil court may not constitutionally intervene"). In other words,

> The rule of action which should govern the civil courts...is that, whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of those church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them.

*Id.* (quoting *Watson v. Jones*, 13 Wall. 679, 80 U.S. 679, 20 L.Ed. 666 (1871)).

This is always the case unless the actions of the church are shown to be fraudulent or collusive, which Jacobs did not allege. *See Gonzalez v. Roman Catholic Archbishop*, 280 U.S. 1, 16, 50 S.Ct. 5, 74 L.Ed. 131 (1929). He does however assert that his claims are sectarian in nature and can be investigated by this court without delving into the religious workings of the church.

■ Jacobs argues that "the issues presented in this case will not require this Court to review the internal judicial process of the church defendants; they will not require inquiry into the doctrinal reasons and motivations of an ecclesiastical tribunal." (Plaintiff's Reply, 2). However, in *Milivojevich*, the United States Supreme Court held that there was "no dispute that questions of church discipline and the composition of a church hierarchy are at the core of ecclesiastic concern." 426 U.S. at 717, 96 S.Ct. 2372. That court held that the Free Exercise clause "permit[ted] hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. [T]he Constitution requires that civil courts accept their decisions as binding upon them." *Id.* at 724–25, 96 S.Ct. 2372. In this case, as in the *Dixon* case, the church established an investigation committee as well as a prosecuting committee to deal with the allegations. *See Dixon*, 290 F.3d 699. The case was ultimately

2. Page references are not yet available for this case.

heard by the Permanent Judicial Committee of Presbytery of Charlotte. Plaintiff Jacobs notes, however, that pursuant to the D.C. Circuit case *Minker v. Baltimore Annual Conf. of United Methodist Church,* 894 F.2d 1354 (D.C.Cir.1990), the court should not prematurely dismiss the case; for the plaintiff, he claims, "need only show that some form of inquiry is permissible and some form of remedy is available." (Plaintiff's Reply, 4).

The *Minker* court held that the First Amendment did not prevent it from ascertaining whether a contract existed between the parties, although it was prohibited from determining whether plaintiff Minker was personally fit for the pastoral position. In this case, the court would inevitably need look to the content of the *Book of Order* to make such a determination as to the existence of an implied contract, since the contract is implied by his membership to the organization governed by the document. Such a "detailed review" of the *Book of Order* coupled with an interpretation of its terms by this court would likely offend the free establishment clause, which dictates that the church maintain its governing autonomy. *See Serbian Eastern Orthodox Diocese,* 426 U.S. at 718, 96 S.Ct. 2372. In *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), the Supreme Court held that "hamper[ing the] church's ability to manage its internal affairs" is violative of the free exercise clause. *See also Dixon,* 290 F.3d 699 ("It is clear that 'a civil court must accept the ecclesiastical decisions of the church tribunals as it finds them,' 'on matters of discipline, faith internal organization, or ecclesiastical rule, custom or law' ")(quoting *Milivojevich,* 426 U.S. at 709–10, 96 S.Ct. 2372).

A later case from the Fourth Circuit extended the holding in *Milivojevich. See*

*Rayburn v. Gen. Conf. of Seventh–Day Adventists,* 772 F.2d 1164 (4th Cir.1985). The *Rayburn* court employed a balancing test, that is, a weighing of the state's interest against that of he or she "claiming protection under the Free Exercise Clause." *Id.* at 1168. In that case, the court was to determine whether a female denied employment in a church may sue the church for violation of her civil rights. The court held that she may not. Since she was seeking a pastoral position, "a role so significant in the expression and realization of [the church's] beliefs that state intervention in the appointment process would excessively inhibit religious liberty." *Id.* That court further held that if the position at issue is "important to the spiritual mission" of the church, the court will not inquire into the reasons behind the church's decisions. Instead, the *Rayburn* court proclaims, "the free exercise clause of the First Amendment protects the act of a decision rather than the motivation behind it." *Id.* at 1169.

Read broadly, as Defendants suggest is proper, these cases would prohibit a civil court from examining the church's conduct at all as it relates to the hiring, firing, investigation and disciplining of employees involved in furthering the spiritual mission of the church. Such a broad interpretation warrants dismissal of all Jacob's claims. A narrow reading, which the Plaintiff purports, on the other hand, might simply prohibit the court from looking to the motivations behind the conduct, while the conduct itself and alleged resultant harm is a proper subject for the courts.

Plaintiff's Reply maintains that these causes of action involve the plaintiff's civil, contract and property rights, resolution of which will not require this court to probe into the subjective, spiritual or ecclesiastical matters that the First Amendment prohibits.

However, in *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871), the Supreme Court maintained, "All who unite themselves to a [religious] body do so with an implied consent to its government." Thus, in accepting the position of Senior Pastor at Mallard Creek, Jacobs yielded to the jurisdiction of the church. Jacobs was no doubt aware of the hierarchical paradigm on which the Presbyterian church was modeled and governed, given his position.

Each allegation/cause of action relates to the Plaintiff in his capacity as Mallard Creek's senior pastor. Thus, in deciding the issues raised in Plaintiff's Complaint, the court would in essence be made to inquire into the church's decisions regarding its own internal management, and discipline of its clergy. Furthermore, if the court did not agree with the procedure used and the effects therefrom, in holding the church liable, the court would be substituting its laws and disciplinary action for that of the church. Each claim put forth by Plaintiff deals simply with the procedures and consequences resulting from the church performing its function of disciplining its clergy. In other words, although Plaintiff cites to various state courts' opinions which allow court inquiry into church actions that are not religious in nature, the United States Supreme Court and the Fourth Circuit have consistently held that churches must have "the power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952); *see Dixon,* 290 F.3d 699. Such disputes regarding church hierarchy are, the Supreme Court said, "the core of ecclesiastical concern." *Milivojevich,* 426 U.S. at 717, 96 S.Ct. 2372. In fact, the plaintiff recognizes that civil courts are prohibited from inquiring into "ecclesiastical matters concerning religious discipline, faith, custom or law." (Plaintiff's Response 1, 3).

If this court is to inquire into whether the church followed the proper procedure called for by the organization's *Book of the Order* in going about its investigation of the allegations against Plaintiff, this too would violate the First and Fourteenth Amendments. For, in *Milivojevich,* the Supreme Court held that such "detailed review[s]" of churches' "highest tribunals" were constitutionally impermissible. *See* 426 U.S. at 718, 96 S.Ct. 2372; *Dixon,* 290 F.3d 699. The same is true of Jacobs' other claims. The harm Jacobs claims he suffered as a result of the alleged torts is merely a consequence of the procedural actions taken by the church administration in investigating the allegations made about the Plaintiff. Because of the dictates of the First and Fourteenth Amendments, the court does not have proper authority to inquire any further into the decisions of the church authorities in dealing with such issues of discipline and church law.

b. *Establishment Clause Analysis*

In *Lemon v. Kurtzman,* 403 U.S. 602, 613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Supreme Court held that in order to stand, a law or government action has to pass three prongs of analysis. The law or action must 1) have a secular legislative purpose, 2) such purpose must have neither the effect of advancing nor inhibiting religion, and 3) its implementation must not create excessive government entanglement with religion. In *Smith v. Raleigh Dist. of N.C. Conf. Of the United Methodist,* 63 F.Supp.2d 694 (E.D.N.C.1999), this court maintained that "many of the establishment clause analyses provided by the courts barring ministers' claims do not differ markedly from the free exercise analysis in those cases. The focus of both is inevitably the degree to which government

becomes involved in a particular church's governance and the inappropriateness of such involvement."

■ The Fourth Circuit held similarly when it ruled that the establishment clause forbade it from inquiring into the hiring decisions of churches. *See Rayburn*, 772 F.2d at 1170. It stated that government entanglement does not result solely from "situations where there is a state assistance or sponsorship of a religious institution." *Id.* at 1170 (quoting *Walz v. Tax Commission of the City of New York*, 397 U.S. 664, 674, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970)). Government entanglement with religion is likely to arise when the situation requires continued government surveillance of church activities. *See Lemon*, 403 U.S at 619, 91 S.Ct. 2105.

■ For example, Plaintiff Jacobs seeks to have this court consider the contents of the *Book of Order* to make a determination as to whether the church breached the alleged implied contract between the plaintiff and itself. He claims that Karen Bohr, in her capacity as the chairperson of the investigating committee "failed to follow the rules of The Book of the Order..." Plaintiff's Complaint, para. 33. The case law suggests that a civil court's investigation of such matters as church disciplinary action and church law are forbidden as offensive to the establishment clause, as such inquiry results in excessive governmental entanglement with religion. *See Bell v. Presbyterian Church*, 126 F.3d 328, 330 (4th Cir.1997). Plaintiff counters by stating, "A court must consider the nature of a particular dispute to determine whether it is ecclesiastical in nature...or whether it is a case in which it should hold religious organizations liable in civil actions for purely secular disputes involving third parties." Plaintiff Jacobs cites to a variety of state cases which suggest that the courts may inquire, without constitu-

tional violation, into whether the church acted "within the scope of its authority and observed its own organic forms and rules." *See Western Conference of Original Free Will Baptists of N.C. v. Creech*, 256 N.C. 128, 123 S.E.2d 619, 627 (1962); *Western Conference of Original Free Will Baptists of N.C. v. Miles*, 259 N.C. 1, 129 S.E.2d 600 (1963); *Atkins v. Walker*, 284 N.C. 306, 200 S.E.2d 641, 651 (1973). *Creech*, *Miles* and *Atkins* dealt with distribution of church property when the congregation split into two factions of religious belief. Those courts have held that civil courts may inquire into such matters dealing with civil, contract or property rights when disputes arise between members. However, the facts of those cases differ sharply from the case at hand. Where *Creech, Miles* and *Atkins* dealt with possession and control of church property when disputes arose among members, this case addresses the issue of internal church governance, and particular methods of investigation chosen by Mallard Creek in the face of allegations of improper conduct of its Senior Pastor. Plaintiff also cite to several Louisiana state cases that support a court's right to inquire into whether proper procedures were followed when a pastor was dismissed. However, Louisiana cases are hardly controlling anywhere save Louisiana and do not trump federal court holdings to the contrary.

In *Bell*, which is factually similar to this case, the Fourth Circuit dismissed a minister's claims, of, inter alia, breach of contract and intentional infliction of emotional distress as being ecclesiastical in nature and thus the court was barred by the First Amendment from adjudicating the matter. 126 F.3d 328. That court stated, "such a decision about the nature, extent, administration, and termination of a religious ministry falls within the ecclesiastical sphere that the First Amendment protects from

civil court intervention." *Id.* at 333. Otherwise courts would be required to monitor the investigative procedures of churches. Such extensive monitoring clearly results in excessive entanglement of church and state. *See Lemon,* 403 U.S. at 615, 91 S.Ct. 2105.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss their action for lack of subject matter jurisdiction is hereby GRANTED.